IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BEIN MEDIA GROUP LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. _____ |
| ) | |
| BEIN.QA, ) | **DEMAND FOR JURY TRIAL** |
| ) | |
| Defendant *in rem*. ) | |
| ) | |

## *IN REM* ANTICYBERSQUATTING COMPLAINT

Plaintiff beIN Media Group LLC ("beIN" or "Plaintiff"), by and through its undersigned counsel, files this complaint against Defendant Domain Name <bein.qa> (hereinafter, "the <bein.qa> domain name"), *in rem*, and alleges as follows:

## INTRODUCTION

1. beIN brings this *in rem* action against the <bein.qa> domain name under the provisions of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

2. beIN is a global entertainment and media company which, among other services, broadcasts the beIN Sports channel available from cable service providers such as Comcast and Time Warner Cable. beIN is the owner of the federally registered mark "BEIN." This is an action to recover the <bein.qa> domain name from a cybersquatter who has demanded that beIN pay millions of dollars for the <bein.qa> and related domain names and, more recently, has threatened to sell the domain names to a broadcast pirate calling itself "beoutQ," which has been illegally re-transmitting beIN's content through the internet and satellite signals.

3. The <bein.qa> domain name incorporates beIN's distinctive mark in its entirety, and has been used by the domain name registrant in bad faith to wrongfully profit from

the reputation and goodwill of beIN. The registrant is additionally using the <bein.qa> domain name in bad faith by making unreasonable demands on beIN and in threatening to sell the domains to a broadcast pirate.

4. beIN files this *in rem* complaint against the Defendant Domain Name in this district because the domain's registrar is located in this district, while the registrant is located in the United Kingdom.

5. Accordingly, under the Anticybersquatting Consumer Protection Act and this Court's *in rem* jurisdiction, beIN requests an order transferring the <bein.qa> domain name to beIN.

## PARTIES, JURISDICTION, AND VENUE

6. Plaintiff beIN Media Group is a global leader in TV production, distribution, and media rights acquisition. Plaintiff beIN Media Group is a Limited Liability Company, headquartered in Doha, Qatar. beIN Media Group includes the beIN Sports television broadcast network, which provides exclusive access to prime sports competitions such as the U.S. Open and the NBA overseas, and broadcasts prime sporting events including World Cup qualifiers, both WTA and ATP tennis, professional soccer leagues, and Conference USA College Sports on major cable systems in the United States, including Comcast and Time Warner cable, as well as distribution via DirecTV and AT&T. beIN SPORTS was launched in 2012 in France, followed within a year by beIN Sports Americas and beIN Sports Asia; in 2014, beIN Media Group was founded in 2014 as the independent holding company for beIN Sports. Since that time, beIN has expanded its portfolio to include movies and general entertainment. In 2016, beIN acquired the Miramax film and television studio. Currently, beIN has over 2,500 employees and broadcasts in countries around the world, including in the United States.

7. Defendant is the domain name <bein.qa>. The person who registered the <bein.qa> domain name is an individual, Mr. Honza Jan Zicha (the "registrant" or "Zicha"). Upon information and belief, Zicha is a resident of the United Kingdom. The company with whom Zicha registered the <bein.qa> domain name is IP Mirror Pte Ltd ("IP Mirror" or the "registrar"). *See* Exhibit 1. IP Mirror is a wholly-owned subsidiary of Corporation Service Company, Inc. ("CSC"), whose global headquarters is located within this judicial district at 251 Little Falls Drive, Wilmington, DE 19808. https://www.cscglobal.com/service/csc/csc-office-locations (last visited May 23, 2018).

8. This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. §§ 1121 and 1125(d)(2)(A), and pursuant to 28 U.S.C. § § 1331 and 1338.

9. Pursuant to 15 U.S.C. § 1125(d)(2)(C)(i), a domain name has its *situs* in the judicial district in which the domain name registrar, registry, or other domain name authority that registered or assigned the domain name is located. IP Mirror is the registrar for the <bein.qa> domain name. Exhibit 1. IP Mirror's address is listed as 251 Little Falls Drive, Wilmington, DE 19808 on a registrar directory and on Whois. *See* Exhibits 2 and 3. As a parent company of IP Mirror, CSC is also a domain name authority. Consequently, the *situs* of the <bein.qa> domain name is in this judicial district.

10. Pursuant to 15 U.S.C. § 1125(d)(2)(C)(i), beIN, as the owner of the "BEIN" trademark, hereby files this *in rem* civil action against the <bein.qa> domain name in this judicial district because the domain name registry is located in this district, and because the <bein.qa> domain name violates beIN's trademark rights and because beIN is not able to obtain *in personam* jurisdiction over Zicha, who would have been the defendant in a civil action.

11. Zicha, the registrant of the <bein.qa> domain name, has an address listed as 72 Embassy Court, Brighton, UK and upon information and belief is a resident of the United Kingdom. *See* Exhibit 1. Upon information and belief, and after the exercise of due diligence, Plaintiff has not been able to form a good faith belief that personal jurisdiction exists over Zicha anywhere in the United States. On information and belief, Zicha owns no property in, owns no places of business in, is not registered to do business in, and is not a resident of Massachusetts or any other State. The registrar for the <bein.qa> domain name, however, is located in this judicial district. Accordingly, *in rem* jurisdiction properly lies in this judicial district.

12. Venue is proper in this district pursuant to 28 U.S.C. § 1391 and 15 U.S.C. § 1125(d)(2)(C)(i).

## FACTUAL ALLEGATIONS

### A. beIN Provides Services to Customers Worldwide Under Its BEIN Trademarks, Particularly Over the Internet

13. beIN is a global leader in TV production, distribution, and media rights. beIN has acquired the rights to distribute and broadcast major sporting events in North America, Europe, the Middle East, North Africa, and Asia.

14. beIN invests substantially in its global intellectual property rights. beIN has amassed trademarks all over the world that cover the beIN brand. Specifically, beIN owns several registered U.S. Trademarks to the word mark "BEIN" in different classes of goods and services.

15. Trademark application serial number 85/639,445 for the "BEIN" mark was filed on May 31, 2012. That application claimed priority to several foreign applications filed on February 7, 2012. On May 31, 2012, the U.S. Patent and Trademark Office issued Reg. No. 4,665,444 for the "BEIN" mark. The "BEIN" mark is registered in classes 9, 16, 35, 38,

and 41, which include (among other uses) classes for television and video broadcasting services, entertainment services, printed matter, and electronic recorders for the transmission and replay of sound and images.  A copy of the registration certificate for Reg. No. 4,665,444 for the "BEIN" mark is attached hereto as Exhibit 4.   By a Deed of Assignment agreement dated effective July 20, 2017, beIN obtained all rights, title, and the entire interest and goodwill in the "BEIN" mark, including the registration for said mark and all rights to enforce and sue for past damages. Since that date, beIN has been and currently is the owner of all right, title, and interest in the "BEIN" mark, including all goodwill and interests from the registration thereof.  beIN's assignment of the "BEIN" mark was recorded with the U.S. Patent & Trademark Office on November 6, 2017 at Trademark Assignment Reel/Frame 6197/0951. *See*

 http://assignments.uspto.gov/assignments/q?db=tm&reel=6197&frame=0951.

16. Trademark application serial number 86/512,818 for the word "BEIN" in a stylized format was filed on January 23, 2015.  That application claimed priority to several foreign applications filed on August 7, 2014.  On August 15, 2017, the U.S. Patent and Trademark Office issued Reg. No. 5,263,217 for the "BEIN" stylized mark.  The "BEIN" stylized mark is registered in classes 9, 16, 18, 21, 24, 25, 28, 35, 38, 41, and 43, which include (among other uses) classes for television and video broadcasting services, entertainment services, printed matter, and electronic recorders for the transmission and replay of sound and images. A copy of the registration certificate for Reg. No. 5,263,217 for the "BEIN" stylized mark is attached hereto as Exhibit 5.  The owner and registrant of the "BEIN" stylized mark is beIN. beIN has been and currently is the owner of all right, title, and interest in the "BEIN" stylized mark, including all goodwill and interests from the registration thereof.

17. Trademark application serial number 86/512,627 for the word mark "BEIN" was filed on January 23, 2015. That application claimed priority to several foreign applications filed on August 7, 2014. On November 14, 2017, the U.S. Patent and Trademark Office issued Reg. No. 5,332,353 for the "BEIN" standard character mark. The "BEIN" mark is registered in classes 18, 21, 24, 25, 28, and 43, which include (among other uses) classes for sports bags, glassware, clothing, and toys and games. A copy of the registration certificate for Reg. No. 5,332,353 for the "BEIN" mark is attached hereto as Exhibit 6. The owner and registrant of the "BEIN" mark is beIN. Since that date, beIN has been and currently is the owner of all right, title, and interest in the "BEIN" mark, including all goodwill and interests from the registration thereof.

18. beIN also owns federally registered trademarks which contain the word "BEIN," including "BEIN SPORT" (Reg. Nos. 5,070,475 and 5,066,623), "BEIN SPORTS" (Reg. No. 5,273,645), and "BEIN CONNECT" (Reg. No. 5,273,646).

19. beIN has used and currently uses its BEIN marks extensively to indicate the source of, and to promote, its global sports and entertainment services. beIN's growing audience includes over 55 million paid subscribers and over 30 million social media followers. beIN broadcasts over 7,500 hours of live content per month across 43 countries, 5 continents, and 60 channels, including in this district and throughout the United States.

20. beIN's websites and social media pages are another means by which consumers can access beIN's content. For example, on beinsports.com, users can check live scores, look up standings and statistics, watch highlights and read articles covering the latest sports news. One of beIN's newest offerings is beIN Sports Connect, an online streaming

services that allows users to watch live sports on their computers, mobile devices, and other streaming platforms.

### B.      The Registrant is Not Using the Defendant Domain Name for Any Legitimate Business Purpose

21.     Zicha, the registrant of the <bein.qa> domain name, has registered (and continued to renew the registrations for) this domain name to wrongfully profit from the goodwill and reputation of beIN and its distinctive marks.

22.     Upon information and belief, Zicha last modified the <bein.qa> domain name on February 23, 2018.  *See* Exhibit 1.  beIN cannot discern when Zicha first registered the <bein.qa> from publicly available information.

23.     As of the date of this Complaint, the <bein.qa> domain name immediately redirects to <bein.com>.   Since at least November 2016, the <bein.com> website, which <bein.qa> automatically redirects to, has had no substantive uses.  As of at least November 11, 2016, the <bein.com> web page had no content except for a logo and the words "beIN.com will be back soon".  *See* Exhibit 7.  As of at least November 23, 2016, the <bein.com> web site stated "new something new and awesome coming soon" and then redirected to a form asking visitors to input their names and email addresses to receive a "newsletter."  *See* Exhibit 8.  On information and belief, the <bein.com> web site remained unchanged for over a year, from November 2016 until December 2017.

24.     As of at least December 4, 2017, the <bein.com> website no longer had text about "coming soon" or a newsletter.  As of that date, the website consisted of text stating "news beIN.com is for sale" followed by a box of text stating "bein for sale including beIN.com, beIN.co, beIN.TV, beIN.fm, beIN.eu, beIN.es, beIN.it, beIN.jp, beIN.qa, beIN.hk, beIN.ae, beIN.pl, and many more…" followed by "send your offer to: offer@bein.com."  *See* Exhibit 9.

On information and belief, <bein.com> remained unchanged from December 2017 until at least February 24, 2018, and continued to solicit offers for the sale of the domain.

25. As of approximately March 16, 2018 until the date of this Complaint, the <bein.com> website home page has stated "beIN new beIN Coming Soon" with no further text. *See* Exhibits 10 and 11. Upon visiting the page, the user is prompted to enter personal information to subscribe to a "newsletter." Exhibit 11.

26. Upon information and belief, Zicha is not currently using the <bein.qa> domain name for any legitimate or bona fide business purposes. On information and belief, Zicha is in the business of profiting from registering domain names and then selling them. Zicha incorporated a business entity named "Buy Sell Dns Ltd." in 2016. Upon information and belief, that business was set up to buy and sell domain names.

27. Upon information and belief, Zicha is attempting to wrongfully profit from the traffic that comes to the <bein.qa> domain name from users who are searching for beIN's world renowned content.

C. **The Registrant is Using the Defendant Domain Names in Bad Faith to Make Unreasonable Demands on beIN**

28. In 2017, Zicha contacted beIN to discuss potential terms for transferring the <bein.com>, <bein.qa> and other similar domain names from Zicha to beIN. Zicha's asking price was 1.5 million dollars.

29. Since 2017, a pirate entity calling itself beoutQ, an anonymous group of persons conducting business through its websites including <BeoutQ.se>, has been engaging in unauthorized distribution and streaming of media content owned by or exclusively licensed to beIN and protected by beIN's intellectual property rights. Through its subsidiary beIN IP, beIN

8

brought suit against beoutQ on September 20, 2017 for beoutQ's misconduct. *See* Exhibit 12 (Complaint).

30. Upon information and belief, Zicha has been in contact with beoutQ to offer to sell <bein.qa>, <bein.com>, and other similar domain names to beoutQ, which has been pirating beIN's content. On or about February 13, 2018, Zicha emailed beIN stating that he has a "buyer" willing to pay £550,000 for <bein.qa>, <bein.com>, and other similar domain names. Zicha indicated in that email that he would accept the buyer's offer if there are no higher offers received. Upon information and belief, Zicha's alleged buyer was beoutQ.

31. By email dated May 15, 2018, Zicha contacted the Global Digital Director of beIN and asked whether beoutQ was part of beIN Media Group. By email dated May 16, 2018, Zicha informed beIN that "they [beoutQ] just contacted us in regards of our beIN stuff." In a later email that same day, Zicha sent an email to beIN in which he "attached images of their [beoutQ] branding and receiver. Those look very similar to yours, hence, why I was asking." The images showed the "beoutQ Sports" logo, an image of the "beoutQ" pirate set top box, and a further advertisement in Arabic for beoutQ.

32. Upon information and belief, Zicha is attempting to leverage his negotiations with beoutQ, which has been illegally pirating content from beIN, in order to increase the pressure on beIN to buy <bein.qa> and similar domain names from Zicha at a higher price.

33. If beoutQ is able to acquire the rights to the infringing <bein.qa> and other <bein.com> domain names, beIN will be irreparably harmed. beoutQ has used the internet to promote its pirated streams and set top boxes for viewing beIN's content. *See* http://www.nytimes.com/2018/05/09/sports/bein-sports-qatar-beoutq.html (last visited May 23,

2018). On information and belief, beoutQ has been in negotiations with Zicha to purchase the <bein.qa> and other similar domain names in order to further promote its pirated broadcasts and streaming. If Zicha is allowed to transfer <bein.qa> and other similar domain names domain names to beoutQ, regardless of what beoutQ does with the domain names, that transfer will impede beIN's ability to promote its own content to its authorized customers and viewers. This threatened sale of <bein.qa> and other similar domain names poses a substantial risk of consumer confusion as to source or origin or as to authorization or sponsorship, since the pirated content will be available to the public on domains consisting of beIN's trademarked name.

34. If beoutQ is able to acquire the rights to the <bein.qa> domain name, beIN's business reputation and goodwill will be damaged causing further irreparable harm for which monetary damages are inadequate. As a result, beIN is entitled to a preliminary and permanent injunction preventing Zicha and the registrar from transferring the <bein.qa> domain name to beoutQ, and ordering that the <bein.qa> domain name be transferred to beIN.

## COUNT I – CYBERSQUATTING (15 U.S.C. § 1125(d))

35. beIN hereby repeats, realleges, and incorporates by reference paragraphs 1 through 34 as if fully set forth herein.

36. The infringing <bein.qa> domain name is either identical to, or confusingly similar and dilutive of, the beIN marks.

37. The infringing <bein.qa> domain resolves not to a website owned by beIN, but rather to a website owned by Zicha. Zicha does not use the <bein.qa> domain name to offer bona fide goods or services and has not done so for years, including the time after beIN registered the beIN marks.

38. The beIN marks are distinctive in this judicial district and in the United States, as well as internationally, and were distinctive before Zicha began the offending conduct leading to this Complaint. The beIN marks were distinctive prior to at least the time of Zicha's registration renewal for the <bein.qa> domain name.

39. In addition to being distinctive, the beIN marks are famous in this judicial district and in the United States, as well as globally, and were famous before Zicha began the offending conduct leading to this Complaint. The beIN marks were famous prior to at least the time of Zicha's registration renewal for the <bein.qa> domain name.

40. Mr. Zicha has maintained, renewed, reapplied, and updated his registration of the <bein.qa> domain with a bad faith intent to profit from the beIN marks and goodwill by redirecting traffic to his unrelated websites and collecting contact information from visitors to <bein.qa>, as well as to solicit offers for the sale of the <bein.qa> and other similar domain names.

41. Zicha has engaged in intentional, bad faith conduct in attempting to sell the <bein.qa> and similar domain names for financial gain to beoutQ, which has been pirating content from beIN.

42. Zicha has also engaged in intentional, bad faith conduct in threatening to sell the <bein.qa> and related domain names to beoutQ in order to induce beIN to purchase the domain names at a higher price.

43. These acts constitute a violation of Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

44. Unless restrained by this Court, Zicha's conduct will cause irreparable harm and injury to beIN, including to beIN's goodwill, reputation and business, for which beIN has no adequate remedy at law.

45. Zicha's conduct warrants that the Court order the forfeiture or cancellation of the <bein.qa> domain name or the transfer of the <bein.qa> domain name to beIN pursuant to 15 U.S.C. § 1125(d)(1)(C) and d(2)(D)(i).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter a judgment as follows:

A. Declaring that there has been a violation of the Anticybersquatting Consumer Protection Act with regard to the <bein.qa> domain name and Zicha's activities as alleged herein;

B. Issuing preliminary and permanent injunctive relief in favor of Plaintiff prohibiting, enjoining and restraining the <bein.qa> domain name from being transferred to "beoutQ" or any entity besides beIN;

C. Issuing preliminary and permanent injunctive relief in the form of an Order that the registration, ownership, and control of the <bein.qa> domain name be transferred immediately and without reservation of rights to beIN; and

D. Awarding beIN such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury as to all claims and issues so properly triable.

|  |  |
|---|---|
| | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| | */s/ Rodger D. Smith II* |
| OF COUNSEL: | Rodger D. Smith II (#3778)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE  19899<br>(302) 658-9200<br>rsmith@mnat.com |
| Peter H. Kang<br>Ash Nagdev<br>SIDLEY AUSTIN LLP<br>1001 Page Mill Rd., Bldg. 1<br>Palo Alto, CA  94304<br>(650) 565-7000 | *Attorneys for Plaintiff* |
| Theodore W. Chandler<br>SIDLEY AUSTIN LLP<br>555 West Fifth St., Suite 4000<br>Los Angeles, CA  90013<br> (213) 896-6000 | |
| May 24, 2018 | |